**E-FILED**
Thursday, 22 December, 2016  10:48:44 AM
Clerk, U.S. District Court, ILCD

IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

JOHN S. TROUTWINE,
      Plaintiff,

v.

                                   Case No. 4:16-CV-04006-JEH

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL
SECURITY,
      Defendant.

**Order and Opinion**

The Plaintiff, John S. Troutwine, applied for disability insurance and supplemental security income benefits on August 20 and 27, 2012. (Tr. 22)[1]. The Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denied Troutwine's application, finding that he could perform "light work" with a few other additional limitations such that he could perform his past relevant work as a commercial cleaner. (Tr. 25, 31). He now appeals to this Court, arguing that the Administrative Law Judge ("ALJ") who conducted the hearing on his claim erred when she failed to properly analyze the opinions of his treating and examining physicians. (D. 12 at p. 3). For the reasons set forth, *infra*, this Court agrees with Troutwine and therefore GRANTS his motion for summary judgment (D. 11) and DENIES the Commissioner's motion for summary affirmance (D. 17).

---

[1] Citations to the record from below are cited as "Tr. __." Citations to the docket in this case are cited as "D. __ at p. __."

For all of Troutwine's adult life, he was steadily employed in various jobs until 2012. The last six years of his employment was with the same company, performing stocking work which involved packing, unpacking, and moving boxes weighing between 75 to 150 pounds each. (Tr. 149). After sustaining a back injury at work, his employer refused to accommodate the restrictions necessary for him to return to work, and Troutwine has been unemployed ever since. (Tr. 49).

At the time of the hearing before the ALJ, Troutwine was 51 years old with two minor children ages 14 and 13. Although he has a driver's license, he drives very little, about ten miles per week. He has a sixth grade education and difficulty with reading and writing. In 2012, his doctor prescribed a cane for him due to the back pain. He tries to walk but must take a break due to pain and can only walk about half of a block. He can sit for periods of time, but he must move around periodically due to pain. In addition to the back pain and swelling, he has pain and numbness down both of his legs and constant back spasms. He spends most of his day sitting in a chair with ice on his back. His wife is afraid to leave him in case he should fall. He has problems bathing and dressing himself, and his wife helps him with these activities. Sweeping and mowing are also painful. He does not go to his children's activities because of the pain. Although he plays board games with them, he cannot do physical activities with them.

In April of 2012, Troutwine began seeing Dr. Kvelland for his back pain, seeing him a total of eight times over the next two years, along with some visits to other physicians for his back problems and medical testing.[2] Although surgery was eliminated as a viable option to treat his pain, he received physical therapy, multiple medications, and injections—none of which proved effective in controlling the back pain. Medical examinations and testing showed moderate

---

[2] Between April 2011 and April 2014, Dr. Kvelland saw Troutwine 14 times. (D. 12, n. 5).

diffuse disc bulging at L4-5, atrophy of the multifidus, and hemangioma at L3 and L4, (Tr. 299; 327; 419; 517), while a bone scan revealed moderate uptake over the SI joints, suggesting bilateral SI joint degenerative joint disease. (Tr. 362). A May 21, 2014 electromyography (EMG) demonstrated sensory polyneuropathy of the lower extremities. (Tr. 573). Examination findings included tenderness of the bilateral SI joints, moderate perilumbar muscular tenderness, paralumbar muscular fullness and spasms, abnormal posture due to discomfort, positive bilateral straight leg raise tests, decreased sensation of the lower extremities, absent Achilles tendon reflexes, myofascial tender points of the bilateral SI joints, decreased range of motion of the right hip, thoracic and lumbar spine, and diminished bilateral lower extremity strength. (Tr. 299; 345-46; 350; 375; 404; 406-08; 489; 516-17; 546). On November 1, 2012, Dr. Kvelland provided Troutwine with a note which stated, "Patient with persistent and severe lumbar area pain— patient cannot work and is unlikely to work in the future."

Dr. Oken, a Board Certified physician in three specialties (pain medicine, physical medicine and rehabilitation, and spinal injury medicine), provided an independent medical examination of Troutwine and reviewed Troutwine's medical records and imaging studies. In a comprehensive report spanning six pages, Dr. Oken reviewed Troutwine's medical history, treatment, tests, and other medical documentation related to his back pain. Like Dr. Kvelland, Dr. Oken concluded that Troutwine was incapable of returning to work given his condition. (Tr. 518).

The ALJ rejected both of these medical opinions, giving them little weight. Regarding Dr. Kvelland's opinion, she stated:

> [T]he undersigned has considered this opinion of Dr. Kvelland; however, this statement is not credible as it is not supported by any objective medical findings. This doctor has not built a bridge between medical findings and any particular job related limitation.  It is not

3

clear on what standard of care, medical facts, radiological findings, physical exam findings, or electrodiagnostic findings he is relying upon to recommend a complete inability to work for [a] man who is clearly complaining subjectively of pain, but has no physical exam findings, radiological studies, or electrodiagnostic studies that even remotely suggest a disabling condition. Further, his own physical examinations do not reveal significant deficits that would support a complete inability to work in any type of job; his physical examinations show only spinal tenderness with trace reflexes and intact sensation; there are no findings of difficulty with ambulation, limited range of motion, or muscle atrophy (Exhibit 8F, 7, 9-10, 11). Conclusions made by Dr. Kvelland without corresponding medical findings are not given controlling weight under the principle s set forth at 20 CFR 404.1527 and 416.927 and SSR 96-Sp. More weight is given to the objective medical findings and reasonable limitations deduced therefrom.  Therefore, the opinion of Dr. Kvelland is not credible to the extent it is inconsistent with the residual functional capacity assessment reached in this decision.

(Tr. 30-31). Regarding the opinion of Dr. Oken, she stated:

The undersigned has also considered the opinion of the [sic] Dr. Oken, the independent medical examiner, who opined the claimant could not return to work in any capacity but in the future may be able to return to sedentary or light duty (Exhibit 21F, 6-7).  This opinion is also given little weight, as the doctor's own physical exam did not show objective findings that would support a complete inability to work in any job.  His objective exam showed some swelling, absent reflexes, tenderness to palpitation, and decreased sensation and 4/5 strength in the lower extremities, but did not show any muscle atrophy, significant weakness, or use of assistive devices (Id. at 5). He did not think he could work because of the way he walked and moved, but he does not offer any specific work related limitations. This examination was made for purposes of a worker's compensation evaluation, and not for purposes of treatment. Conclusions made by Dr. Oken without corresponding medical findings are not given controlling weight under the principles set forth at 20 CFR 404.1527 and 416.927 and SSR 96-5p. Therefore weight is given to the objective medical findings and reasonable limitations deduced therefrom. Therefore, the opinion of Dr. Oken is not credible to the extent it is

inconsistent with the residual functional capacity assessment reached
in this decision.

(Tr. 31).

This Court's function on review is not to try the case *de novo* or to supplant
the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v.
Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989).
Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if
supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).
Although great deference is afforded to the determination made by the ALJ, the
Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d
589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's
findings were supported by substantial evidence and whether the proper legal
standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986).
Substantial evidence is defined as such relevant evidence as a reasonable mind
might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S.
389, 390 (1971); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

Regarding medical opinions, though an ALJ must give controlling weight
to the medical opinion of a treating physician, the ALJ must do so only if the
treating physician's opinion is "well-supported by medically acceptable clinical
and laboratory diagnostic techniques and not inconsistent with other substantial
evidence." *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008), citing *Hofslien v.
Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006); 20 C.F.R. § 404.1527(c)(2). An ALJ must
provide "good reasons" for discounting such opinions. *Cambell v. Astrue,* 627 F3d
299, 306 (7th Cir 2010). Should an ALJ provide such "good reasons" for discounting
a treating physician's opinion, she must then decide what weight to give that
opinion. *Id.* at 308. If the ALJ does not give a treating physician's opinion
controlling weight, the Social Security regulations require the ALJ to consider:  1)

the length, nature, and extent of the treatment relationship; 2) the frequency of examination; 3) the physician's specialty; 4) the types of tests performed; 5) and the consistency and supportability of the physician's opinion.  20 CFR § 404.1527; *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009).

As asserted by the Plaintiff, the ALJ made a number of errors when considering the medical opinions in this case. First, the ALJ ignored nearly all of the factors set forth in 20 CFR § 404.1527. She did not discuss how Troutwine's longstanding relationship with Dr. Kvelland over many visits impacted her assessment of his medical opinion. Likewise, when rejecting both Dr. Kvelland's and Dr. Oken's opinions, she failed to discuss the fact that their opinions were not only consistent with each other, but un-contradicted by any other medical opinions in the record. Nor did she mention Dr. Oken's particular specialties.

Such omissions could be considered harmless, were it not for the fact that when considering the "types of tests performed" (20 CFR § 404.4527), the ALJ woefully mischaracterized the nature of the objective medical evidence in the record when she stated that "no physical exam findings, radiological studies, or electrodiagnostic studies even remotely suggest a disabling condition." (Tr. 30). This statement is flat wrong. As already noted, *supra*, various tests and examinations demonstrated moderate diffuse disc bulging at L4-5, atrophy of the multifidus, and hemangioma at L3 and L4, (Tr. 299; 327; 419; 517), while a bone scan revealed moderate uptake over the SI joints, suggesting bilateral SI joint degenerative joint disease. (Tr. 362). A May 21, 2014 electromyography (EMG) demonstrated sensory polyneuropathy of the lower extremities. (Tr. 573). Examination findings included tenderness of the bilateral SI joints, moderate perilumbar muscular tenderness, paralumbar muscular fullness and spasms, abnormal posture due to discomfort, positive bilateral straight leg raise tests, decreased sensation of the lower extremities, absent Achilles tendon reflexes,

myofascial tender points of the bilateral SI joints, decreased range of motion of the right hip, thoracic and lumbar spine, and diminished bilateral lower extremity strength. (Tr. 299; 345-46; 350; 375; 404; 406-08; 489; 516-17; 546).

Does this objective medical evidence substantiate Troutwine's subjective complaints of pain to the extent that he was incapable of work? This Court cannot say, and neither could the ALJ, because neither of us are medical doctors and we are both prohibited from "playing doctor." *Worzalla v. Barnhart*, 311 F. Supp. 2d 782, 788 (E.D. Wis. 2004), *quoting Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (ALJ may not succumb to the temptation to play doctor and make her own independent medical findings). What can be said is that the un-contradicted medical opinions in the record concluded that the medical records, in conjunction with Troutwine's subjective complaints of pain, established that he could not work. The ALJ therefore could not assert that the objective medical evidence does not even "remotely suggest a disabling condition" without erroneously making her own independent findings. *Id.*

Fundamental to the ALJ's error in this case, and overlooked by both parties in their motions, is the ALJ's erroneous consideration of Troutwine's *pain*—his chief complaint and the primary reason the medical opinions concluded he cannot work. The record is replete with Troutwine's complaints of pain, the unsuccessful treatment he had for that pain, and the significant functional limitations that pain created. The Seventh Circuit Court of Appeals has addressed the "recurrent error made by the Social Security Administration's administrative law judges" of "discounting pain testimony that can't be attributed to 'objective' injuries or illnesses—the kind of injuries and illnesses revealed by x-rays." *Adaire v. Colvin,* 778 F3d 685, 687 (7th Cir. 2015). "An ALJ may not discount a claimant's credibility just because her claims of pain are unsupported by significant physical and diagnostic examination results." *Pierce v. Colvin,* 739 F3d 1046, 104950 (7th

Cir2014). In *Adaire,* the Seventh Circuit explained that the ALJ's error in that case to discount the claimant's pain testimony was "well-nigh incomprehensible" where there *was* plenty of objective evidence of pain. *Id. See also Smith v. Comm'r of Soc. Sec.,* 1:14-CV-01284-JEH, 2015 WL 5164056, at *6 (C.D. Ill. Sept. 2, 2015). The same can be said here.  The medical opinions and the underlying objective medical records do not contradict Troutwine's claims regarding the severity of his pain. The ALJ, however, rejected not only Troutwine's complaints of pain but the medical opinions' evaluation of those complaints because, in her opinion, the objective medical evidence did not verify this pain. The ALJ erred in doing so, for she minimized Troutwine's claims of pain—and consequently the medical opinions which credited those claims—by formulating her own medical opinion about what the objective medical evidence demonstrated regarding pain— something she is not qualified to do. *Rohan*, 98 F.3d at 970. (ALJ may not succumb to the temptation to play doctor and make her own independent medical findings).

One final problem with the ALJ's treatment of the medical opinions. The ALJ concludes her rejection of each of the medical opinions with this statement, "Therefore, the opinion of Dr. Kvelland/Dr. Oken is not credible to the extent it is inconsistent with the residual functional capacity assessment reached in this decision." (Tr. 31). This sort of circular, boilerplate logic has been "repeatedly described as 'meaningless boilerplate.'" *Pepper v. Colvin*, 712 F. 3d 351, 367 (7th Cir. 2013), *quoting Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2017). And for good reason. To reject a medical opinion because it is inconsistent with the ALJ's residual functional capacity ("RFC") finding flips the process on its head; the ALJ must look to the medical opinions, as well as the other evidence in the record, in *formulating* the RFC. She may not first formulate the RFC and then reject anything inconsistent with it, which is what the gibberish quoted above suggests she did.

Statements like this in a decision of an ALJ add nothing to the decision and cannot be used to otherwise bolster inadequate analysis.

In light of the foregoing, the Plaintiff's motion for summary judgement (D. 11) is GRANTED, the Defendant's motion for summary affirmance (D. 17) is DENIED, and the matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for the ALJ to reweigh the medical opinions consistent with this Order and Opinion and, after doing so, reevaluate Troutwine's RFC and the other steps in the sequential process in light of that reweighing. The Clerk's Office is hereby directed to enter Judgment in favor of the Plaintiff and against the Defendant. This matter is now terminated.

*It is so ordered.*

Entered on December 21, 2016

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE